Thank you, Your Honors. And may it please the Court, Aaron Stoll representing the appellant and debtor, Machele Goetz. The issue in this case, the main issue, is that upon a conversion of a Chapter 13 bankruptcy to a Chapter 7, who gets the equity created in assets during dependency of the Chapter 13? Should it go to the trustee, the bankruptcy estate, or should it go to the debtor? And there continues to be a large split around the country on this issue. The courts that have ruled in favor of trustees have done so mostly by stating that 11 U.S.C. 348 F1A is completely clear and that there's no ambiguity in it, and that that indicates that upon a conversion that the assets that were there as of the commencement of the case go into the converted case. They've also indicated that they don't believe, the cases don't believe that there's any post-petition equity interest in property that can arise. But it should be noted that, also here, that there's at least four different approaches that are being used by these courts that rule in favor of trustees. And so their claim that this part of the code is completely clear, it doesn't jive, really, with the four different types of approaches. Despite the fact that they may all reach the same conclusion, there's four different approaches. What would you consider or how would you characterize the majority and minority viewpoints on this issue? There's a slight, in terms of which approach they're using? Well, the bigger question of how to treat. Okay. There's a slight majority, apparently, of courts that have sided with debtors in the case. But for all practical purposes, it's about the same. It's a roughly equal split. And so, in regards to this ambiguity of 348F1A, the Supreme Court in the Harris v. Vieglin case actually found ambiguity within 348F. And I'd like to quote from their case. Now, that case was a slightly different issue. They were looking at post-petition wages that had been paid into the Chapter 13 trustee. And then upon conversion, that those funds were still with the trustee who should be entitled to those funds. And the court there said that the debtor was entitled to those funds. But their quote was, bad faith conversions apart, we find nothing in the code denying debtors funds that would have been theirs had the case proceeded under Chapter 7 from the start. In sum, 348F does not say expressly, on conversion, accumulated wages go to the debtor. But that is the most sensible reading of what Congress did provide. So they did find some ambiguity there. It's a slightly different issue. But the cases that side with the debtor, do so by essentially using what some commentators have called the snapshot approach. Or basically, they're looking at what position was the debtor in at the time the case was filed. And essentially, if they convert from the 13 to the 7 later, that they be made no worse off than they would have been if they had simply done a Chapter 7 to begin with. And from that perspective, using the Supreme Court's words from the Harris case, in this case, the trustee and I stipulated around the time that we were doing our hearing for the petition to compel abandonment, that there would have been no net equity in this case. There would have been no liquidation of the assets if it had simply been a 7 to begin with. That's what we had stipulated, too. There are lots of things within the legislative history for this part of the Code. And the Legislature, the Congress... So given the increased valuation or increased value of the property, is that now something that that same agreement wouldn't hold? Well, that's the trustee's position is that now that the property is appreciated and there would be roughly, if this house were sold, $60,000 to $70,000, let's say, of net equity here to distributed creditors, that's the dispute on that. So the Congress actually indicated in the legislative history for 348F1A that first they were resolving the split when they amended that part of the Code in 1994. And then they gave an example of how a debtor could become worse off and that they didn't want that to of equity. The debtor applies $10,000 exemption to that so that there's no net equity there, nothing to liquidate. But during the Chapter 13, the debtor pays down the loan so that now there's $10,000 of equity and then converts. In that circumstance, the argument was that okay, if we go with the way courts have with trustees, then that equity would now be available for the trustee to liquidate the house, take the proceeds and then distribute to the creditors. Congress indicated that they did not want that to happen. And part of the reason was that they have a preference or policy of wanting to promote Chapter 13 filings. And they indicated that it was a disincentive for someone to file a 13 if they're going to be made worse off for having tried the 13 and failed and converted to a 7 than if they had simply filed a Chapter 7 in the first place. They also rejected a case, the holding in a case. It was the Liebrook case. And that particular case was there was a house that was inherited during a Chapter 13 but more than 180 days after the case was filed. And then the case got converted to Chapter 7 and the court in that case said that house is now part of the Chapter 7 bankruptcy estate. So Congress said that it was rejecting that holding in favor of the Bobroff case. The Bobroff case was somewhat similar but there was a tort claim that arose after the case was filed. And the court in that case had some very good quotes to indicate the reasoning that Congress said it was adopting with this case. And so I'd like to just read those briefly. If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if Chapter 13 proves unavailing, the incentive to give Chapter 13, which must be voluntary, a try will be greatly diminished. Conversely, when Chapter 13 does prove unavailing, no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts. So basically they didn't want debtors to be made worse off and they didn't want creditors to be made better off. And that's what would actually happen in this case if the house is liquidated. Certainly the debtor would be worse off. She wouldn't have her house. Creditors would be able to get money from that, the proceeds of that house, which they would not have received if this had been a Chapter 7 to begin with. She would have kept her house. There would have been no funds available pursuant to her stipulation. And here, all of the increase in equity was due to the market, right? That is correct. Well, there is a small amount, around $1,000 or less, that would have been paying down on the loan. But it was a small amount, nonetheless. So there actually is kind of an interesting case that sort of tries to Are there cases that deal with things other than the home in terms of properties that would belong to a debtor that transforms a 13 into a 7 in terms of what is considered part of the estate? I think that there are some cases out there. I don't recall any off the top of my head. But a classic example would be of a vehicle that is being paid off, essentially, through a Chapter 13. So if I was paying my vehicle off in my Chapter 13, and it is basically paid off, but I get to the end of my case, and let's say I lose my job and I have to enough value in it over whatever exemptions I might be able to apply. And that would be an instance of, yes, something like that. It could also happen with other assets that might have a secured debt against it, you know, furniture or something, things like that. So it would really impact any type of an asset that Well, how does that operate now, if you pay off your car or If I make it all the way through my Chapter 13 and I've paid my car off, then they will send me the title, release a lien on the title and so on. But if you convert it to 7 before you pay off the 13, what happens to the car? Right now what would happen to it is that the creditor would be put back where it was contractually minus whatever had already been paid. So, and this is not uncommon in cases that get dismissed, for example, Chapter 13. Maybe they've paid down half of the principal according to the terms of the Chapter 13. Maybe they had a cram down on the interest rate where they're paying a lower interest rate than the contract rate. Upon dismissal of the case, everything goes back to what it was before, but it would then be minus whatever was paid to that creditor through the Chapter 13. What if you've got a car that's an antique? When you go in, you've got a car that's 23 years old, but you've taken good care of it, it's in good shape, and you're under 13 and you're paying down, and then it turns out the car crosses over the antique line, it's now 25 years old, and it's a collector item and its value shoots way up. If you convert to seven, what happens to that car? Well, that depends on whether the court would rule for the trustee or for the debtor. Well, under current law, I mean, I say current law, you're saying current law doesn't really answer the question. Is that the problem we're facing? I mean, the current law in our district now is according to the BAP decision in our case, which would indicate that the trustee would be entitled to take that vehicle. Because that improvement in value is part of the estate, because the estate is accounted for at the time of the transition. Is that correct? That's the way the BAP... case is transformed from 13 to seven, that's the value that it has for purposes of its use as estate for the payment of debt. Right. That's the way it would be according to the BAP's decision in this case. Now, are you familiar with the Castleman case, the matter of Castleman that's being... I looked at that case. ...that's being sought for the Supreme Court? So that, it's, I think, a slightly different issue. I think they had sold their house during the pendency of their Chapter 13. There was the question about, you know, what to do with the proceeds. I would note, though, in that case, that there was a split on the three  And, you know, they basically made a statement that the debtors there were being punished for doing exactly what Congress wanted them to do, which was to try a Chapter 13 in the first place. Counsel, did you want to reserve any time? Yes. I would like to reserve the rest of my time. Thank you. Thank you, Mr. Stoll. Mr. Weber? Excuse me. Good morning, and may it please the Court. My name is Victor Weber. I'm the Chapter 7 trustee in the underlying case in the appellate before you. An issue in this case is who gets the equity that grows in property of the bankruptcy estate during the pendency of a Chapter 13 case when it converts to Chapter 7? I think everyone agrees, all the case law agrees, the answer is in Section 348 of the Bankruptcy Code, which simply provides that property of the estate in the converted case shall consist of property of the estate as of the date of the filing of the petition that remains in the possession of, or is under the control of, the debtor on the date of conversion. I think it's very clear, and the Bankruptcy Court agreed as did the Bankruptcy Appellate Panel, that under a plain reading of this statute, when the debtor filed the case, she had a fee simple interest in this house. So when she converted her case, her bankruptcy estate got a fee simple interest in her house. I think it's important, Section 541 of the Bankruptcy Code spells out in more detail what property of the bankruptcy estate is. It specifies that property of the bankruptcy estate includes all legal and equitable interests of the debtor in property as of the commencement of the case. When I read that in law school, I think it was my second year, but I remember in first year in property, I learned at hand talking about the bundle of sticks. Those legal interests make me think of the bundle of sticks. The property stick that I'm asking this Court to find that I have as a Chapter 7 trustee is the right to sell this property for what the market will bear and keep the proceeds. The debtor had that right when the case was filed, and I should have that right now. Sort of analogously to this, one of the most important Supreme Court cases for bankruptcy is the United States v. Butner case from 1979. And that case held that property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. And in this case, the debtor's position is that there are now two owners of this property. Ownership has been bifurcated. The debtor owns the property not by virtue of a deed, not by virtue of a judgment, just by virtue of the internal happenings in a bankruptcy case. That's not a right based on state law. It's foreign to Missouri law. I suspect it's an extremely unusual and strange property interest. And I think that if Congress wanted to create a new property interest like this, they'd have a very strong reason and do it very clearly, and they haven't done so in this case. Further, and to hold otherwise is the debtor request, would be to hold that the interest in property held by a Chapter 7 trustee are somehow lesser than those that are held by the debtor at the commencement of the case. And that cannot be. That cannot be under 348, and that cannot be under another section of the Bankruptcy Code, 11 U.S.C. 544A3. Section 544 is commonly called the trustee's strong arm powers. There are certain rights given a bankruptcy trustee, usually to do with creditors and lien holders, but one of them applies in this case. Specifically, a Chapter 7 bankruptcy trustee has all the rights and powers of a bona fide perjure of real property from the debtor on the date the debtor's case commenced. Well, someone who bought the debtor's house from her on the day she filed bankruptcy could certainly sell it for whatever they wanted to today and keep all the proceeds. I don't see any way you can read the statute and say that that right doesn't remain in the bankruptcy estate. So I want to give another illustration of the property interest I'm talking about. When the debtor's case commenced, she could have sold a put option in her house. Let's say the house is worth $100,000. She could have sold the right for someone else to sell the house for $105,000 or more and keep all the proceeds in excess of $105,000. The debtor absolutely had a right to sell that sort of option. It's a common sort of option traded on markets all the time. That is the legal interest of the debtor in property under 541. Under 348, I have the right to sell that same option today. If I could sell that option today and time it for no time at all, it would just be me selling the house. I'd like to change gears a little bit and sort of rebut some of the arguments made by the debtor and by the cases that are adverse. How about the argument that doing it the way you suggest creates a disincentive to file Chapter 13? I think that argument is absolutely correct, Judge. It does. If the debtor were to prevail here, it is a nice benefit for debtors. In all things being equal, I admit a debtor would be more likely to file a Chapter 13 than a Chapter 7. But where we are now, I don't think that matters. Well, wouldn't it? Because it would seem that that was partially Congress's intent for Chapter 13 is to have more of these worked out and keep debtors out of the liquidation portion of bankruptcy. Well, Judge, I think underlying the preference for Chapter 13 was an assumption. And it was true in the past that unsecured creditors get paid more in a Chapter 13 repayment plan than they would in a Chapter 7 liquidation. In other words, Congress was primarily concerned with inducing and encouraging debtors to repay their unsecured debts. And so in 1994, when Section 348 was amended, it was amended to the Chapter 13 case shall apply in the converted 7 case. And that plainly says, okay, if you set the value of this house at $130,000 in the 13, that's what you're using in the 7. In 2005, they amended that to specifically provide, they're not going to apply in the case converted to a Chapter 7 anymore. It specifically says the valuations don't apply. But in 2005, Congress did some other things with the bankruptcy code. What they did is they made Chapter 13 mandatory for anyone who could afford to make payments to their unsecured creditors. So there's no further need to induce anyone to file Chapter 13 to pay unsecured creditors because they're already getting paid. They have to file Chapter 13 anyway. The only people who would be induced to file Chapter 13 if you were to hold as the debtor request would be those who aren't going to pay anything to their unsecured creditors because they don't have to. They can still file Chapter 13. They can still modify loans and do all sorts of helpful things, but they don't have to pay their unsecured creditors to confirm a plan and get a discharge. And so the whole public policy argument underlying the 1994 code and those provisions, it just doesn't have any efficacy anymore. And further, the very rule that the debtor wants you to enact, it wasn't in Section 348F1A, which is still the same. It was in Section 348F1B, which compelled courts to maintain that valuation. That statute's been amended. And it simply doesn't apply anymore. And so now the debtor's left with an argument to make where, oh, okay, we're not going to, cap value. We're going to say that value is a property. And it doesn't make any sense any longer. Are you familiar with the Castleman petition before the Supreme Court? I have read the Bankruptcy Court, District Court decisions. Yes, sir. Okay. Well, would the decision from the Supreme Court on the issue before them, if they were to accept it, what would its implications be for this case? It would dispose of this case, Your Honor. I think it's on all fours. It's pretty much the same case. One thing I wanted to address was something my colleague brought up about whether or not the House was still part of the bankruptcy state at the commencement of the case. After the case converted to Chapter 7, we stipulated to a number of facts about the House. We stipulated that when the case commenced, it was worth $130,000. There was a mortgage against it of approximately $107,000. And the debtor could have claimed a $15,000 homestead exemption. If you add those figures up, they add up to $122,000, leaving $8,000 of equity. So the bankruptcy estate had an equity interest of $8,000 in the property when the case commenced. And we also stipulated it probably couldn't have realized that, because in order to sell the House, you've got to hire a real estate agent, you've got to pay closing costs. You're not going to see the $8,000. So we did not stipulate that the entire property had been exempted out. Further, in order to exempt property out of the estate, debtors are required to very clearly on their schedules indicate the whole property is being exempted. That did not occur here. So I don't really see any basis for the court to find the property being completely exempted out and it's not property of the bankruptcy estate. That is all of the argument I'd like to make, unless you have any further questions. I'd like to respectfully request that you uphold the decisions of the Bankruptcy Court and the Bankruptcy Appellate Panel. Thank you. Thank you, Mr. Weber. Mr. Stoll, your rebuttal. Mr. Weber, the trustee, he mentioned that 348F1B was indicating value and different timeframes. There's a case that he cites, which is actually in his favor, which essentially states that 341F1B is not relevant when analyzing 348F1A. That's the N. Ray Goins case. And the issue with that part of the code there is that it's really more talking about allowing a cramp down on value in a Chapter 13 to ride through to a Chapter 11 or Chapter 12 and not to be able to ride through to a Chapter 7. The other thing I wanted to mention was that within 11 U.S.C. 541A1, it specifically talks about interest of the debtor in property as of the commencement of the case. And so it seems that there's been an assumption that no interest can arise after the commencement of the case. And I think that Can I? It seems to me that your argument essentially is that the equity value is locked in at the time of the filing and divorced from the asset itself. So let's pose the opposite situation. Let's pose at the time that of the filing there is $200,000 worth of equity, and then the property value goes down such that there's $20,000. Nobody would argue that somehow the debtor has to come up with that difference if it goes down. I see I'm out of time, but if I could allow the respond really quickly. You can answer the question. Well, the issue with that would be is from a practical standpoint, would there be anything available to liquidate at that point? That's the way I would argue. Well, I guess my point is that your argument of divorcing the equity value and locking it in at the time of filing doesn't quite work consistently if you go the opposite direction, I guess is my point. Right. And like I mentioned, the only thing I could argue about that is that from a practicality standpoint, I don't know that a trustee would be able to go after a debtor for that. Right. And that's my point. I agree. Thank you. Thank you, Mr. Stoll. Thank you also, Mr. Weber. The Court appreciates both counsels' participation in argument before us. It's obviously a knotty question that may be decided before we get to make our conclusion, but we will do our best to evaluate the materials you've submitted and the arguments you've provided and render a decision. Thank you. Counsel may be excused.